UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-05-GWU

BELVE JACKSON,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

**INTRODUCTION**

Belve Jackson brought this action to obtain judicial review of an administrative decision denying his application for Disability Insurance Benefits (DIB).  The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."  Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Jackson, a 44-year-old former fork lift operator with a high school education, suffered from impairments related to degenerative joint disease and a hearing impairment.  (Tr. 12, 16-17). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 14, 16).  Since the available work was found to constitute a significant number of jobs In the national economy, the claimant could not be considered totally disabled.  (Tr. 17-18).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record also does not mandate an immediate award of DIB.  Therefore, the

court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to medium level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds and a need to avoid exposure to hazards.  (Tr. 45-46).  In response, Ellis identified a significant number of jobs which could still be performed.  (Tr. 46).  The ALJ relied heavily upon this information to support the administrative decision.  (Tr. 17).

Jackson argues that the ALJ erred in evaluating the evidence of record relating to his physical condition.  Dr. Robert Hoskins examined the plaintiff in June of 2009 and diagnosed chronic back pain, a broad-based left-sided disc protrusion narrowing the left lateral recess, probable radicular symptoms in the left leg, arthritis in the hands, a history of arthritis in the hips, chronic neck pain, a history of crepitus in the neck, and a history of chest pain consistent with Prinzmetal's angina.  (Tr. 502).  Dr. Hoskins opined that the claimant would be restricted from lifting more than ten pounds.  (Tr. 504).  Standing and walking were restricted to no more than two hours a day in 30 minute intervals.  (Id.).  Sitting was restricted to no more than five hours a day in 30 minute intervals.  (Tr. 505).  Jackson should never balance and should only "rarely" climb, stoop, crouch, kneel, and crawl.  (Id.).  Restrictions were also noted with regard to reaching, handling, pushing and pulling.  (Id.).  The doctor indicated that the plaintiff should avoid exposure to heights, moving machinery,

temperature extremes, and vibration.  (Id.).  These are far more severe physical restrictions than those included in the hypothetical question.

The ALJ noted that Dr. Hoskins was not a treating physician whose opinion would be entitled to controlling weight.[1]  (Tr. 16).  The ALJ rejected the opinion because he felt that the physician relied heavily upon Jackson's subjective complaints, the opinion was not well-supported by objective medical data, and the opinion was inconsistent with other medical evidence of record such as the opinions of the non-examining medical reviewers and Dr. Barry Burchett, another examiner. (Id.).  Dr. Hoskins's physical examination results do contain a number of modest findings such as no misalignment, asymmetry, crepitation, tenderness, effusions, instability, or atrophy upon examination of the head, neck, spine and extremities. (Tr. 502).  Deep tendon reflexes were unremarkable and the doctor reported no sensory deficits.  (Id.).  However, the doctor had access to a July 11, 2008 MRI scan of the lumbar spine which revealed a broad-based left-sided disc protrusion narrowing the left lateral recess.  (Id.).  Dr. Hoskins specifically indicated that his

---

[1]A letter from the plaintiff's representative suggests that the treatment notes dated from November, 1999 to March, 2009 contained in Exhibit 22f were from Dr. Hoskins. (Tr. 471).  However, Dr. Hoskins's name does not appear in the notes and these appear to be from the Ulrich Medical Clinic.  (Tr. 472-478).  The June, 2009 report from Dr. Hoskins indicates that the claimant is a new patient being seen for the purpose of a Social Security examination.  (Tr. 501).  Under these circumstances, Dr. Hoskins would not appear to be a treating source.

restrictions concerning lifting, carrying, and sitting were based upon this finding. (Id.).  Thus, at least some objective medical evidence supports the doctor's opinion.

Dr. Burchett examined Jackson in July of 2008.  (Tr. 419-425).  Dr. Burchett noted largely normal findings upon physical examination with no muscle atrophy reported and sensory modalities well-preserved.  (Tr. 422).  The physician made reference to the claimant having undergone an MRI scan of his lumbar spine but did not have access to the report.  (Tr. 419).  Dr. Burchett noted an impression of chronic back pain without radiculopathy, a hearing impairment, gastroesophageal reflux disease and controlled hypertension but did not address the issue of specific functional limitations.  (Tr. 422).  Therefore, this opinion would not offset that of Dr. Hoskins.

Dr. Parandhamulu Saranga reviewed the record on September 23, 2008.[2] Dr. Saranga opined that Jackson would be limited to medium level work restricted from a full range by a need to avoid climbing ladders, ropes or scaffolds and to avoid exposure to hazards.  (Tr. 452-459).  The ALJ included all of these restrictions in the hypothetical question.  (Tr. 45-46).

The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source

---

[2]Holly True reviewed the record for the administration in August of 2008.  (Tr. 426-433).  True is not an "acceptable medical source" under the federal regulations at 20 C.F.R. § 404.1513.

who has not examined you." 20 C.F.R. § 404.1527(d)(1).  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 694 (6th Cir. 1994).  In the present action, Dr. Saranga had no opportunity to see and comment upon the opinion of Dr. Hoskins,  who did not examine the plaintiff until June of 2009.  Dr. Saranga also did not mention the July, 2008 lumbar spine MRI scan upon which Dr. Hoskins relied.[3]  (Tr. 452-459).  Thus, it would appear that Dr. Hoskins was the only physician of record to see this report.  The ALJ should at least have sought the advice of a medical advisor who had seen the complete record and commented upon it.    Therefore, a remand of the action for further consideration is required.

Jackson also argues that his medical problems would prevent him from maintaining employment and, so, he could not meet the duration requirements for substantial gainful activity.  The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999).  However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact.  Gatliff, 172 F.3d at 692.  In the present action, Jackson has not identified similar evidence suggesting that he would not be

---

[3]Holly True, whose opinion Dr. Saranga adopted, also did not mention the MRI scan.  (Tr. 426-433).

11-05  Belve Jackson

able to maintain employment.  Therefore, the court must reject this argument of the plaintiff.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration of the plaintiff's physical condition.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 3rd day of November, 2011.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**